IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LASHAWN MICHAEL BRYANT, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 17-722 |
| | ) | |
| v. | ) | Judge Cathy Bissoon |
| | ) | |
| PLATINUM FLUID SOULTIONS, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM ORDER

Pending before the Court is a Motion for Summary Judgment filed by Defendant, Platinum Fluid Solutions, LLC ("PFS"). (Doc. 18.) For the reasons that follow, Defendant's Motion for Summary Judgment will be granted.

## BACKGROUND[1]

Plaintiff, LaShawn Bryant ("Bryant"), brings this action for race-based termination of employment pursuant to 42 U.S.C. § 1981. (Complaint ¶ 3, Doc. 1.) Bryant is African American. (Plaintiff's Responsive Concise Statement, hereinafter "Plaintiff's Facts," ¶ 9, Doc. 22.) On April 8, 2017, Bryant and Luke Stark ("Stark"), a Caucasian employee of PFS, became involved in a heated exchange. (Id. at ¶¶ 6, 12, 19.) At some point during that exchange, they were standing face to face, and Stark pushed Bryant. (Id. at ¶ 20; Exhibit 2 to Defendant's Concise Statement of Material Facts, hereinafter "Defendant's Facts," 11, 32, Doc. 19-2.) It is

---

[1] These facts are drawn from the parties' respective submissions to the Court. Where facts are disputed, the Court presents them in a light most favorable to Bryant as the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) ("The evidence of the nonmovant is to be believed, and all justifiable interferences are to be drawn in his favor."). As the Court writes only for the parties, the Court will recount only those facts that are material to resolving the instant motion.

undisputed that Bryant ultimately responded by punching Stark. (Plaintiff's Facts ¶ 21.) The details of the altercation—including which party was the aggressor—are disputed. Stark was taken to Washington Hospital, where he was treated for a neck sprain and a concussion. (Plaintiff's Facts ¶ 28.) Bryant testified that he had marks on his neck and some scratches, but did not seek medical treatment. (Id. at ¶ 29.) Bryant, Stark, and two of their coworkers who were present at the worksite during the incident shared their versions of events with PFS's Operations Manager, Nate Franks ("Franks"), prior to Bryant's termination. (Id. at ¶¶ 48-49.) Two days after the incident, Bryant was terminated at a meeting with Franks and Daniel Smith ("Smith"), PFS's President. (Id. at ¶¶ 34-39.) Stark was not terminated and remains employed at PFS. (Id. at ¶ 47.) PFS's asserted basis for Bryant's termination was his physical assault on Stark, as well as Bryant's role in the altercation as aggressor and as the only person who threw a punch.[2] (Id. at ¶¶ 39, 41.) Bryant bases his inference of racial discrimination on the disparity between his treatment and Stark's. (See generally Plaintiff's Brief Opposing Summary Judgment, Doc. 24.)

Bryant testified that he informed Smith and Franks that Stark was the aggressor, that Stark was the first to engage in physical contact, and that Stark had put his hands on Bryant. (Plaintiff's Facts ¶¶ 23, 30-31, 35-36.) Bryant also testified that he told Smith that Stark had

---

[2] PFS also maintains company policies that were cited as violated in Bryant's termination notice. For example, one policy provides, in relevant part:
> All employees, including supervisors and temporary employees, should be treated with courtesy and respect at all times. Employees are expected to refrain from fighting . . . or other conduct that may be dangerous to others. . . . Conduct that threatens, intimidates, or coerces another employee . . . will not be tolerated. . . . Anyone determined to be responsible for threats of (or actual) violence or other conduct that is in violation of these guidelines will be subject to prompt disciplinary action up to an including termination of employment.

(Exhibit 4 to Defendant's Facts 2, Doc. 19-4.)

2

punched him first.[3] (Id. at ¶ 35-36.) Two of Bryant's coworkers spoke to Franks on the day of the incident to explain what had transpired, and Franks spoke to Smith about these coworkers' accounts that day. (Id. at ¶ 69.) Following Bryant's termination, they also emailed their accounts to Franks. (Exhibits 10 and 11 to Defendant's Facts, Docs. 19-10, 19-11.) These accounts tended to support a sequence of events in which Stark was the instigator.[4]

Stark's account of events differed. Smith testified that Stark told him—on either April 9 or 10, 2017—that things got heated between Stark and Bryant, that Bryant was chest-bumping Stark, and that Stark pushed Bryant away because Stark was caught near a pipe. (Exhibit 2 to Defendant's Facts 4, 11.) Smith heard from Stark that Bryant responded to the push by punching Stark multiple times and then taking and tossing Stark's cellphone. (Id. at 11.) Smith also testified that he sat down with Bryant to get Bryant's side of the story on the Monday following the incident, April 10, 2017, before deciding to terminate Bryant that day. (Id. at 12-13.)

## LEGAL STANDARD

Where direct evidence of racial discrimination is unavailable, Section 1981 claims are analyzed under the burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).

---

[3] Smith disputes this, and testified that Bryant told him that Bryant was displeased with Stark's arrival at the worksite and that Stark's directions and communications at the worksite had led to a series of escalations, culminating in the physical exchange described by Stark, in which Bryant made physical contact first and then punched Stark. (Exhibit 2 to Defendant's Facts 12-13.) Bryant's version of events, per Smith's testimony, mirrored Stark's account. (Id. at 13, 15.)

[4] For purposes of resolving the instant motion, the Court considers these post-termination emails as evidence of the spoken accounts that Bryant's coworkers gave to Franks pre-termination. Specifically, as the Court will address further below, one email to Franks states that Stark and Bryant were arguing face to face when Stark pushed Bryant, which resulted in mutual "pushing and shoving" until punches were thrown. (Exhibit 10 to Defendant's Facts.) The other explains that Bryant had tried to calm Stark down before the pair ended up fighting, with Stark first pushing Bryant in the lower throat or upper chest area before punches were thrown. (Exhibit 11 to Defendant's Facts.)

> Under that framework, a plaintiff first must establish the requisite elements of his claim (called the *prima facie* elements); if so, the "burden then must shift to the employer to articulate some legitimate, nondiscriminatory reason" for the adverse employment action, and then the plaintiff bears the burden of establishing that the employer's stated reason for the adverse action was an excuse, or pretext, for why the action was actually taken.

Castleberry v. STI Grp., 863 F.3d 259, 263 (3d Cir. 2017) (quoting McDonnell Douglas Corp., 411 U.S. at 802–04)).

To establish a prima facie case, a plaintiff must demonstrate: (1) he is a member of a protected class; (2) he was qualified for the position; (3) he suffered an adverse employment action; and (4) that circumstances give rise to an inference of unlawful race discrimination. Mandel v. M & Q Packaging Corp., 706 F.2d 157, 169 (3d Cir. 2013). For purposes of this motion, PFS does not contest the first three elements. (Defendant's Brief in Support of Motion for Summary Judgment, hereinafter "Defendant's SJM Brief," 4, Doc. 20.)

To prevail on the fourth element, a plaintiff may present evidence that similarly situated employees outside the protected class were treated more favorably. Cooper v. Thomas Jefferson Univ. Hosp., 743 F. App'x 499, 502 (3d Cir. 2018). Bryant's evidence concerning the fourth element is at the heart of the parties' dispute.

In analyzing the elements above, particularly the fourth element, "[t]he central focus of the *prima facie* case is always whether the employer is treating some people less favorably than others because of their race." Sarullo v. United States Postal Serv., 352 F.3d 789, 798 (3d Cir. 2003) (internal citations and quotation marks omitted). When an individual is terminated for a valid, undisputed cause that does not relate to race, this may preclude a prima facie case for racial discrimination. See id. ("[Plaintiff's indictment for] drug activity fatally undermines his suggestion that [Defendant's] actions raise the inference of discrimination necessary to his *prima facie* case [for racial discrimination]."); Ward v. Procter & Gamble Paper Prods. Co., 111 F.3d

4

558, 560 (8th Cir. 1997) ("It is beyond question that an employee's striking of a fellow employee is a legitimate, nondiscriminatory reason for dismissal.")

As mentioned, once a plaintiff has established a prima facie case, the burden shifts to the defendant to present a legitimate, nondiscriminatory reason for its adverse employment decision. McDonnell Douglas Corp, 411 U.S. at 802; Stanziale v. Jargowsky, 200 F.3d 101, 105 (3d Cir. 2000). "This burden is 'relatively light,' and the employer need only 'introduc[e] evidence which, taken as true, would permit the conclusion that there was a non-discriminatory reason for the unfavorable employment decision.'" Tomasso v. Boeing Co., 445 F.3d 702, 706 (3d Cir. 2006) (quoting Fuentes v. Perskie, 32 F.3d 759 (3d Cir. 1994)). If a defendant meets this burden, the burden of production shifts back to the plaintiff to demonstrate by a preponderance of the evidence that the reasons offered by the defendant are a pretext for discrimination. McDonnell Douglas Corp. 411 U.S. at 804; Fuentes, 32 F.3d at 763.

To establish pretext, a plaintiff must "point to some evidence, direct or circumstantial, from which a fact-finder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." Tomasso, 445 F.3d at 706 (quoting Fuentes 32 F.3d at 764) (internal quotations omitted); Doe v. C.A.R.S. Prot. Plus, Inc., 527 F.3d 358, 370 (3d Cir. 2008) ("Put another way, to avoid summary judgment the plaintiff's evidence rebutting the employer's proffered legitimate reasons must allow a fact-finder reasonably to infer that each of the employer's proffered non-discriminatory reasons was either a post hoc fabrication or otherwise did not actually motivate the employment action (that is, that the proffered reason is a pretext).").

5

**ANALYSIS**

Cutting to the chase, Bryant fails to meet his burden to establish a prima facie case because he has not put forward meaningful evidence that "circumstances give rise to an inference of unlawful race discrimination." Mandel, 706 F.2d at 169. Bryant's only evidence of racial discrimination is the disparity between his prompt termination and Stark's retention following the fight. This theory of discrimination relies on Stark's comparability to Bryant. But, as explained below, they were not comparable in relevant respects in the eyes of their employer.

Comparability is a fact-intensive analysis, and Bryant has the burden to demonstrate that Stark was "similarly situated" to Bryant in relevant respects, and was treated more favorably. Epps v. First Energy Nuclear Operating Co., 2013 U.S. Dist. LEXIS 41140, at *51 (W.D. Pa. Mar. 25, 2013); see Warfield v. SEPTA, 460 F. App'x 127, 130 (3d Cir. 2012). In order to conclude that there is evidence that Stark was treated more favorably, the Court must "focus . . . on the particular criteria or qualifications identified by the employer as the reason for the adverse action." Pivirotto v. Innovative Sys., 191 F.3d 344, 359 (3d Cir. 1999) (quoting Simpson v. Kay Jewelers, 142 F.3d 639, 647 (3d Cir. 1998)). Other considerations may include whether "the two employees dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." Opsatnik v. Norfolk S. Corp., 335 F. App'x 220, 223 (3d Cir. 2009). While "[a] violation of company policy can constitute a pretext for unlawful discrimination if others similarly situated also violated the policy with no adverse consequences," a plaintiff must still demonstrate that "those employees [were] similarly situated." Goosby v. Johnson & Johnson Med., Inc., 228 F.3d 313, 322 (3d Cir. 2000).

Given what PFS knew at the time, Bryant and Stark were not similarly situated in the fight. PFS's asserted reasons for Bryant's termination were that Bryant was the aggressor in the fight, that Bryant was the only individual to throw punches in the fight, and that Bryant's physical assault violated company policy. (Defendant's Facts ¶¶ 38-41.) Regardless of whether PFS's assertions about Bryant's status as the aggressor and the sole puncher were true, there is no genuine dispute as to whether Smith and Franks believed these facts to be true when they made their decision to terminate Bryant.[5] For example, it is undisputed that Stark's injuries from the altercation were more severe than Bryant's injuries, providing an objective indication of the comparative severity of Bryant's and Stark's conduct. (Defendant's Facts ¶¶ 28-29; Plaintiff's Facts ¶¶ 28-29; see Defendant's Brief Supporting Summary Judgment 6, Doc. 20.) Stark suffered a neck sprain and a concussion, and he was treated for these injuries at a hospital. (Plaintiff's Facts ¶ 28.) Bryant testified that he had marks on his neck and some scratches, but did not seek medical treatment. (Id. at ¶ 29.) Bryant also testified that he believed these differences in injuries caused him to be fired:

> Q. So you think you were fired because you won the fight?
> A. Pretty much. I'm thinking I got fired because [Stark] had more of a laceration or physical injuries --
> Q. Injuries?
> A. -- versus me. Pretty much, he's firing me because of that. He's not firing me because -- and he's not even taking into consideration, oh, this man put his hands on this man as an employee, both you guys should have been fired.

---

[5] Bryant asserts that "[a] reasonable jury could determine it was plausible that Defendant knew Stark was the aggressor and Defendant applied its policies in a discriminatory manner when in terminated Bryant and retained Stark." (Plaintiff's Brief Opposing Summary Judgment 9.) But Bryant provides a "mere scintilla of evidence" to support an inference that Smith and Franks believed Stark to be the aggressor—this is not enough. Anderson, 477 U.S. at 252.

7

(Exhibit B to Plaintiff's Appendix of Facts 53-54, Doc. 23-2.) The undisputed difference in injuries between the parties raises the bar on the evidence Bryant must adduce to create a prima facie inference of racial discrimination.

Bryant argues that there is sufficient evidence for a jury to conclude that PFS knew that Stark was at least as culpable as Bryant, and that PFS in fact knew that Stark was the aggressor. Bryant's evidence that Smith and Franks believed Stark to be the aggressor (or a co-aggressor) consists of the testimony of two coworkers who communicated with Franks, Bryant's own testimony, and Smith's testimony. The Court will address each component of this evidence to determine whether it adds any weight to Bryant's assertions about what Smith and Franks believed. The Court will conclude that, while some of this evidence arguably portrays Stark as the aggressor, the evidence is ambiguous as to what transpired during the fight and provides no basis for a factfinder to conclude that Smith and Franks believed Stark was equally or more culpable than Bryant when they terminated Bryant. As a result, Bryant has not shown that Stark is a comparable employee.

Specifically, coworker Kameron Keene's email to Franks stated in full:

> This is my written statement on what I witnessed regarding the altercation on April 8, 2017 between Luke Stark and Lashawn Bryant. [Stark] called my phone after an incident that occurred on pad trying to engage in an argument with me. I told him that I did not want to argue with him. He then said "I'll do you one better and come down on pad" which resulted on [sic] me hanging up on him. [Stark] then showed up on pad engaging in yet another argument with me and fellow co workers which [Bryant] attempted to defuse. [Bryant] and [Stark] then started arguing which resulted in [Bryant] and [Stark] being face to face with one another. Luke then pushed [Bryant] which resulted in a bit of pushing and shoving between the two. There was [sic] then punches thrown which resulted in Luke leaving the premises.

(Exhibit 10 to Defendant's Fact.) And, coworker James Foxx Pallini's email to Franks stated in full:

> This is my written statement regarding the situation on the night of April 8th 2017 the following is what I personally witnessed. Following a water mishap [Stark] came to our

8

area of work to plead what he believed happened which then ensued an argument between himself and fellow coworkers. [Bryant] attempted to calm [Stark] down to no avail. The argument continued and the two were face to face. I'm not sure what caused it but Luke proceeded to push [Bryant] in the upper chest lower throat area. There was a short period of shoving which then lead [sic] to punches thrown. Luke then left the area.

(Exhibit 11 to Defendant's Facts.) These statements do not specify who threw the first punch, nor do they provide sufficient information for any conclusion as to the parties' respective shares of responsibility for what ultimately happened. The transmission of these accounts to Franks does not tend to show that Smith and Franks believed Stark was the aggressor or was equally culpable.

Bryant's testimony about what he told Smith and Franks is similarly ambiguous. Bryant testified that he told Franks, on the night of the incident, that Stark "just put his hands on me. I said, we just got in an altercation. I said . . . this dude is tripping out, man. Something is wrong with him." (Exhibit B to Plaintiff's Appendix of Facts 32.) He then testified that, the following day, he told Franks "we got in a physical altercation. I threw a couple blows and that was it. . . . I told him it wasn't my fault, man. . . . I didn't put my hands on this man." (Id. at 33.) Bryant, by his own account, provided little information about the specific sequence of events during the physical fight that led to the parties' injuries. (Id. at 48.)

As for Smith, he testified that Stark told him

things got heated between [Stark] and [Bryant], and that [Bryant] was up in his face chest bumping him, and that [Stark] pushed[6] [Bryant] off of him because at that point he was between a horizontal piece of pipe that he couldn't get away from. [Bryant was] chest bumping him. [Stark] pushed him back up off of him, and then [Bryant] proceeded to punch him multiple times.

---

[6] This portion of the deposition transcript has been corrected via a signed and notarized errata sheet. (Exhibit 2 to Defendant's Facts 21.) Bryant disputes the validity of this correction, and maintains that Smith used the word "punched" rather than "pushed" here. Substituting the word "punched" in this context does not alter the Court's analysis in any way.

9

(Exhibit C to Plaintiff's Appendix of Facts 11, Doc. 23-3.) This testimony, like the statements above, provides no evidence supporting a theory that Smith and Franks believed that Stark was the aggressor or was equally culpable.

Despite this lack of evidence, Bryant argues that these statements are enough for a jury to infer that Smith and Franks believed that Stark was the aggressor, leading in turn to an inference of racial discrimination based on the unequal application of PFS's disciplinary policies. As the Court has explained above, Bryant's evidence that Smith and Franks believed Stark was the aggressor (or believed him to be equally culpable) does not rise to the level required to withstand summary judgment. See Anderson, 477 U.S. at 252. Because there is no genuine dispute that Smith and Franks believed Bryant to be the aggressor, Bryant has failed to meet his burden to demonstrate that Bryant and Stark were comparable in the eyes of their employer at the time of Bryant's termination.[7]

The Court acknowledges conflicting narratives as to who instigated a physical fight between two coworkers. But these conflicts are ultimately immaterial. The Court must train its focus on "whether the employer is treating some people less favorably than others because of their race." Sarullo, 352 F.3d at 798. At this stage in the litigation, Bryant has not met his burden to produce evidence showing that his former employer discriminated on the basis of race. As a result, PFS's Motion for Summary Judgment must be granted.

\* \* \*

Accordingly, Defendant's Motion for Summary Judgment (Doc. 18) is GRANTED. The Court's Judgment Order will follow.

---

[7] For the same reasons, even if Bryant were able to establish a prima facie case, he would fail to demonstrate that PFS's asserted legitimate reasons for firing Bryant—stemming from Bryant's role in the fight—were pretextual.

10

IT IS SO ORDERED.

February 4, 2019                                   s\Cathy Bissoon
                                                   Cathy Bissoon
                                                   United States District Judge

cc (via ECF email notification):

All Counsel of Record